*(Circuit Court of Peoria County.)*

## Chicago, R. I. & P. R. R. Co.

### vs.

### Brockerson, Mayor of City of Peoria, et al.

#### (1869.)

1. PRACTICE—TEMPORARY INJUNCTION—WHEN GRANTED. Where it appears that great mischief may be done if a temporary injunction be not granted without notice and the rights of neither party will apparently be impaired by its issuance a court will readily grant such a request.

2. STREETS—CONTROL OF—CITY'S RIGHTS IN REGARD THERETO. While under the Illinois laws, a city is vested with the fee of streets within its limits and can adopt all needful rules and regulations for their use she has not the unqualified control thereof, but holds the fee in trust for the public without power to alien or otherwise dispose of their use.

3. STREETS—RIGHTS OF PUBLIC—LAYING OF RAILROAD TRACKS. The city cannot prohibit the use of streets to its inhabitants or the public generally but it is nevertheless no perversion of their legitimate use to allow a railroad company to lay its tracks along them.

4. RAILROADS—RIGHTS IN STREETS—POWER CONFERRED BY CHARTER—AUTHORITY OF CITY COUNCIL. Where a railroad corporation is given by its charter the right to construct a railroad between two cities, such a grant includes the right to enter the two cities.

A city council has authority to give it the right to run along the streets of the city.

5. ORDINANCE—CONSTRUCTION—POWER CONFERRED IN THIS CASE ON RAILROAD. An ordinance conferring power on a railroad corporation to locate its railroad through any street of the city in such a manner as to interfere as slightly as practicable with the convenience of the inhabitants of the city, and also directing the company to construct safe crossings wherever the railroad runs along the streets, confers no power on the railroad company to construct side tracks, switches, etc., in the streets but merely to build its line along such streets as may enable it to conveniently get into and out of the city, provided it does not materially obstruct the streets in so doing.

6. ORDINANCE—WHEN VOID—CITY COUNCIL EXCEEDING POWER—RAILROAD IN STREETS. An ordinance conferring on a railroad company the power to run in any of the streets of city, wherever it sees fit to do so provided it does not materially obstruct the streets is beyond the power of the city council, as such a disposition of the streets would prevent their general use by the public.

7. RAILROADS—NATURE OF RIGHT IN STREETS—POWER TO LAY SIDE TRACKS. The right given a railroad to build its line carries with it the power to build side tracks but not in the streets of a municipality; its right of way in a street is a mere easement and if it wishes to lay side tracks it should obtain land by condemnation as pointed out in the statute.

8. PLEADING—PLEADER MUST STATE FACTS. In pleading, it is a well known rule that the pleader must state facts, not conclusions.

Bill for injunction. Heard before Judge Puterbaugh. The facts are stated in the opinion.

*Ingersoll & McCune,* for complainant.

*H. W. Wells,* for defendant.

PUTERBAUGH, J.:—

The complainant filed its bill for an injunction, alleging in substance that it is the lessee of the Peoria and Bureau Valley Railroad Company, and as such, succeeded to all its rights and privileges granted by its charter; that on the 28th day of July, 1853, the council of the city of Peoria passed an ordinance authorizing and empowering the Bureau Valley Railroad Company to locate, grade, finish and construct its railroad through and along any street, lanes, avenues and

alleys of said city, in such manner as might be necessary for the transportation of freight and passengers, and the loading and unloading of merchandise at necessary points, and to extend the same whenever necessary for its business, etc.; that under said ordinance, the Peoria and Bureau Valley Railroad Company, and the complainant as its lessee, have from time to time constructed, located and erected upon Water street in said city, such tracks, side tracks and switches as they found necessary for carrying on their business, etc. The bill further avers that the immense increase of business, in loading and unloading and carrying merchandise upon the complainant's road has made it necessary to locate and construct upon Water street an additional side track, extending from the junction of North Fayette and Water streets to its shops and freight-house; and that the complainant, as it had a lawful right to do, had recently constructed a side track between the points mentioned, and on the north side of Water street, but that said track is in an unfinished condition; that when finished it will be so constructed as to offer no material obstruction to the passage of teams driven with reasonable care along and upon said street. The bill alleges in general terms that in laying down said side track, it has conformed strictly to the provisions of said ordinance, and has is no manner acted illegally or encroached upon the rights of the city.

The bill then charges that the defendants, claiming to be lawful members of the common council of the city of Peoria, held a meeting on the evening of the 29th of November, 1869, and then and there conspiring, confederating, etc., to injure and annoy the complainant, and to unlawfully destroy and injure its property, and for the further purpose of wrongfully destroying and breaking up the lawful business of the complainant carried on in said city, agreed that they would, by force, tear up and throw out of the street the said side track, by the complainant lawfully constructed and maintained; that the defendants were collecting a crowd of men to commit such unlawful act on the night of November 30th inst.; that the complainant had not sufficient force to resist the defendants and their force. The bill prays for an in-

junction to restrain the defendants from tearing up said side track, as threatened by them.

The bill is verified by affidavit, and alleges that there would be danger of the objects of the injunction being defeated, if notice was given to the defendant.

Under our practice, as applicable to this circuit, where the party enjoined is at liberty on short notice, and for cause shown, to procure a dissolution of an injunction, and is fully indemnified by the complainant's bond, for all damages and expenses incurred by wrongful suing out of the writ, temporary injunctions are granted with considerable facility. The object of a preliminary injunction is to prevent some threatening injury until an opportunity for a full and deliberate investigation is given. The court, upon an application being made, will examine the bill to ascertain whether any serious mischief is likely to occur, and will act upon each case as justice may seem to require. It cannot be expected that a judge can at once in every case determine upon the facts and the law of the case as presented, and besides, the parties have a right to be heard upon the merits of their application. If an injunction without notice is granted, when the circumstances of the case do not satisfy it, the party in whose favor it is granted, is compelled to suffer the consequences upon a dissolution.

In this case the bill was filed on the evening of the 30th of November, and it charged that the defendants were about to do the act complained of the same night, consequently very little time was had for an examination of the bill, and the questions involved being of great public importance, and it appearing that no serious injury could occur to either party by a short delay, it was highly proper that the condition of the parties should not be disturbed until their rights could be fully heard in open court, a temporary injunction was allowed, subject to be dissolved on one day's notice.

The defendants have appeared by their counsel, and demurred to the bill, and moved a dissolution of the injunction.

By the demurrer the defendants admit that all the facts alleged in the bill, and well pleaded, are true.

The only question material to be determined is, whether the facts stated in the bill and exhibits, entitles the complainant to the relief asked, and to a continuance of the injunction.

By the common law, the proprietors of real estate, who lay out the same into towns and cities, retain the fee in the land over which the streets and alleys pass, the public only having the right to an easement. But by our statute the fee simple title to the land embraced by streets, vests in the municipal corporation, to be held in trust for the uses and purposes of the public. The corporate authorities may vacate, alter or change the streets, or may also establish others, but they have not the unqualified control and disposition of them. The city may improve and to a great extent control the streets and public ground, and adopt all needful rules and regulations for their management and use, but she cannot *alien or otherwise dispose* of their use. At most she is but a trustee for the entire public, and like all other trusts, it must be exercised with prudence and discretion.

The municipal authorities of this city cannot divest themselves of, nor abridge their legitimate discretion and duty, to alter and regulate the streets as they in the exercise of sound judgment may deem the public good to require. Nor can they prohibit such use of the streets by its inhabitants and the public generally, as is granted by law to every citizen as a matter of strict right.

While the corporation has thus no right to sell or otherwise dispose of the public streets and alleys, it is no perversion of their legitimate use to allow a railway company to lay down its track upon them, provided it be not a franchise or monopoly only, and be equally open to all citizens.

The Peoria and Bureau Valley Railroad Company was authorized by its charter to construct a railway from Peoria to Bureau Valley, and this authority gave it the right to enter the city of Peoria. It was not the intention to compel it to stop as soon as it touched the city limits, and thus render the road comparatively useless both to the public and the company. The language of the charter requires no such limited construction, and the objects of the law would evidently

be frustrated by so illiberal an interpretation. The city council had the power to authorize the company to lay down its road on Water street, and to run its cars and locomotives over it. The city having the right to grant this privilege to the company, the question arises, what authority and privilege did this ordinance confer.

The first section of the ordinance provides, "That the Peoria and Bureau Valley Railroad Company be, and they are hereby fully authorized and empowered to locate, grade, erect, construct and finish their said railroad through and along any street, lane, avenue or alley, in the said city of Peoria, the said Peoria and Bureau Valley Railroad Company so locating, grading and constructing the same through any and all of the said streets, lanes, avenues and alleys, to locate, grade and construct the same in such manner as to afford as little inconvenience as is practicable to the inhabitants of the said city."

The second section provides that the company in crossing streets, etc., "shall prepare and construct a safe, commodious and convenient passage across the said *railroad track* by said company so located, graded or constructed," etc.

The ordinance nowhere confers the right to lay side-tracks, switches, etc., as alleged in the bill.

It is claimed that this ordinance by implication confers upon the company the right to construct its road along and upon all the streets, avenues, lanes and alleys of the city, whenever it sees proper to do so, provided it does not materially obstruct the streets.

The ordinance in question will bear no such unreasonable and unjust construction. The evident intention and purport of the ordinance is, that the company should have the right to run its cars over any street in the city to enable it to reach its depot or place of business. That is to say, it should have the privilege of using the street in common with the balance of mankind, and to that end was authorized to construct its road in the street to enable it to conveniently enter and depart from the city. If the ordinance meant that the company should so use the street, or any part thereof, so as to

exclude or prevent the balance of the public from its common use, the city council in passing it, exceeded its powers, and the ordinance is void, because, as we have seen, the council have no power to dispose of the public streets so as to prevent their general use by the public.

The grant of this right of way, in my opinion, only conveyed the right to the company to erect their road on the street; it does not include the right to erect a depot, car house, side tracks, switches and other structures for the convenience or business of the road. If it has power to lay down side tracks, it derives its authority from some other ordinance than the one in question.

Railroads are permitted to use the public highways and streets in entering and departing from a city, upon the ground of public necessity and convenience. It would be impossible to construct a road, if it had not this right. But our highways should not be perverted from their legitimate use any farther than is rendered necessary by the necessities of the case.

The counsel for the complainant contends that the right to construct a railroad carries with it the power to construct switches or side tracks. This will no doubt be conceded. But having this right, it does not give the company the power to take the public highways for any such purpose. The right to construct a railroad, also carries with it the right to build car shops, machine shops, turn-tables, etc. Indeed, it would be impossible for a railroad to get along without them, and yet will the counsel pretend that because a railroad must have these conveniences, that it can, by permission of the city, appropriate the public streets for that purpose? Any ground needed by a railroad for the convenience of its business may be purchased, and if it is unable to obtain it in that way it may proceed to condemn private property in the manner pointed out by the statute.

If a railroad condemns land under the statute for its right of way, it becomes the owner of such land in fee. Not so with a right of way on the highway and public streets. In the latter case it only requires the right to pass over the streets.

in common with others. It does not own the ground over which its track is laid, and has no interest in it except the privilege of passing over it. It has no exclusive right to anything except the use of the rails over which it runs its cars.

It is a well known rule of pleading, that the pleader must state facts and not conclusions of law. The complainant has stated no facts in its bill giving it the right to lay down the side track in question, except the ordinance referred to, and in my opinion, that ordinance confers no such authority. And the company having no right to lay down a railroad track upon the public streets, except when authorized so to do by the law, it became and was the duty of the municipal authorities to remove or cause the same to be removed. For these reasons the injunction must be dissolved.

I have not had time to give the authorities a close investigation, or to revise this hastily written opinion, and may have erred in some of the reasons given, but in the conclusions arrived at, I am confident of being correct.